Ezzo v. Google, Inc. et al — Doc. 1

# UNITED STATES 11th CIRCUIT COURT
# MIDDLE DISTRICT OF FLORIDA

FILED

2009 MAR 17 AM 11: 06

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

In re:

CASE NO:

JAMIL E. EZZO

Plaintiff,

Vs      2:09-cv-159-FtM-29DNF

✓ GOOGLE.INC. ET AL.
✓ AOL.COM, ET.AL.
✓ TIME WARNER, INC.
  PARENT COMPANY OF AOL.COM

Defendants,

And

✓ GET ME QUOTES. COM
  Findcosmeticsurgeons.com ET AL.

✓ DOCTORSSAYYES.COM
  My Choice Medical Acquistion Sub Inc. ET AL.

✓ FINDYOURPLASTICSURGEON.COM
  Baskettcaseweb Development, ET AL.

✓ IENHANCE.COM
  PLASTICSURGERY.COM

✓ PLASTICSURGERY.ORG
  AMERICAN SOCIETY of PLASTIC SURGEONS

  YELLOWBOOKLEADS.COM ET AL.

       Parties_____/

Dockets.Justia.com

# COMPLAINT FOR UNITED STATES REGISTERED TRADEMARK INFRINGEMENT, UNFAIR BUSINESS PRACTICES, VIOLATIONS OF UNITED STATES STATUTES, FRAUD ON THE INDUCEMENT, AND MISREPRESENTATIONS TO THE PLAINTIFF

Jamil E. Ezzo, the undersigned acting *Pro se* proceeding to sue GOOGLE et al., AOL et al. TIME WARNER, INC. PARENT COMPANY OF AOL.COM and GET ME QUOTES. COM, Findcosmeticsurgeons.com ET AL, DOCTORSSAYYES.COM My Choice Medical Acquistion Sub Inc. ET AL, FINDYOURPLASTICSURGEON.COM Baskettcaseweb Development, ET AL, IENHANCE.COM, PLASTICSURGERY.COM PLASTICSURGERY.ORG, AMERICAN SOCIETY of PLASTIC SURGEONS, YELLOWBOOKLEADS.COM ET AL as parties et.al. and alleges:

This is an action for equitable resolution and damages for US registered Trademark infringement, unfair business practices, violations of US statutes, fraud on the inducement and misrepresentations to the plaintiff regarding illegal use of his US Trademark for profit, for a Temporary Restraining Order Pending Injunctive Relief, and for damages in excess of $90,000,000. pertaining to the actions of the Defendants, et al. Further, this action is for misfeasance, misrepresentation, lack of diligence, false presentation to obtain property, and voluntary complicity among the Defendants, et al, and with third parties,

Plaintiff seeks damages in excess of $90,000,000. pertaining to the Parties, et al.

The defendants and parties are in violation of United States Code TITLE 15 > CHAPTER 22 > SUBCHAPTER III > § 1114

## § 1114. Remedies

**(1)** Any person who shall, without the consent of the registrant—
**(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
**(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.
As used in this paragraph, the term "any person" includes the United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, or other persons acting for the United States and with the authorization and consent of the United States, and any State, any instrumentality of a State, and any officer or

employee of a State or instrumentality of a State acting in his or her official capacity. The United States, all agencies and instrumentalities thereof, and all individuals, firms, corporations, other persons acting for the United States and with the authorization and consent of the United States, and any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.
**(2)** Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125 (a) or (d) of this title shall be limited as follows:
**(A)** Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125 (a) of this title shall be entitled as against such infringer or violator only to an injunction against future printing.
**(B)** Where the **infringement** or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section 2510 (12) of title 18, TITLE 18 > PART I > CHAPTER 119 > § 2510 § 2510. Definitions

As used in this chapter—
**(1)** "wire communication" means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce;
**(2)** "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;
**(3)** "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States;
**(4)** "intercept" means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.[1]
**(5)** "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than—
**(a)** any telephone or telegraph instrument, equipment or facility, or any component thereof,
**(i)** furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or
**(ii)** being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;
**(b)** a hearing aid or similar device being used to correct subnormal hearing to not better than normal;
**(6)** "person" means any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation;
**(7)** "Investigative or law enforcement officer" means any officer of the United States

or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses;

**(8)** "contents", when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication;

**(9)** "Judge of competent jurisdiction" means—

**(a)** a judge of a United States district court or a United States court of appeals; and

**(b)** a judge of any court of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interceptions of wire, oral, or electronic communications;

**(10)** "communication common carrier" has the meaning given that term in section 3 of the Communications Act of 1934;

**(11)** "aggrieved person" means a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed;

**(12)** "electronic communication" means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include—

**(A)** any wire or oral communication;

**(B)** any communication made through a tone-only paging device;

**(C)** any communication from a tracking device (as defined in section 3117 of this title); or

**(D)** electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

**(13)** "user" means any person or entity who—

**(A)** uses an electronic communication service; and

**(B)** is duly authorized by the provider of such service to engage in such use;

**(14)** "electronic communications system" means any wire, radio, electromagnetic, photooptical or photoelectronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications;

**(15)** "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications;

**(16)** "readily accessible to the general public" means, with respect to a radio communication, that such communication is not—

**(A)** scrambled or encrypted;

**(B)** transmitted using modulation techniques whose essential parameters have been withheld from the public with the intention of preserving the privacy of such communication;

**(C)** carried on a subcarrier or other signal subsidiary to a radio transmission;

**(D)** transmitted over a communication system provided by a common carrier, unless the communication is a tone only paging system communication; or

**(E)** transmitted on frequencies allocated under part 25, subpart D, E, or F of part 74, or part 94 of the Rules of the Federal Communications Commission, unless, in the case of a communication transmitted on a frequency allocated under part 74 that is not exclusively allocated to broadcast auxiliary services, the communication is a two-way voice communication by radio;

**(17)** "electronic storage" means—

**(A)** any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

**(B)** any storage of such communication by an electronic communication service for purposes of backup protection of such communication;

---

§ 1114. Remedies (B) (continued)
the remedies of the owner of the right infringed or person bringing the action under section 1125 (a) of this title as against the publisher or distributor of such newspaper, magazine, or other similar periodical or electronic communication shall be limited to an injunction against the presentation of such advertising matter in future issues of such newspapers, magazines, or other similar periodicals or in future transmissions of such electronic communications. The limitations of this subparagraph shall apply only to innocent infringers and innocent violators.
**(C)** Injunctive relief shall not be available to the owner of the right infringed or person bringing the action under section 1125 (a) of this title with respect to an issue of a newspaper, magazine, or other similar periodical or an electronic communication containing infringing matter or violating matter where restraining the dissemination of such infringing matter or violating matter in any particular issue of such periodical or in an electronic communication would delay the delivery of such issue or transmission of such electronic communication after the regular time for such delivery or transmission, and such delay would be due to the method by which publication and distribution of such periodical or transmission of such electronic communication is customarily conducted in accordance with sound business practice, and not due to any method or device adopted to evade this section or to prevent or delay the issuance of an injunction or restraining order with respect to such infringing matter or violating matter.
**(D)**
**(i)**
**(I)** A domain name registrar, a domain name registry, or other domain name registration authority that takes any action described under clause (ii) affecting a domain name shall not be liable for monetary relief or, except as provided in subclause (II), for injunctive relief, to any person for such action, regardless of whether the domain name is finally determined to infringe or dilute the mark.
**(II)** A domain name registrar, domain name registry, or other domain name registration authority described in subclause (I) may be subject to injunctive relief only if such registrar, registry, or other registration authority has—
**(aa)** not expeditiously deposited with a court, in which an action has been filed regarding the disposition of the domain name, documents sufficient for the court to establish the court's control and authority regarding the disposition of the registration and use of the domain name;
**(bb)** transferred, suspended, or otherwise modified the domain name during the pendency of the action, except upon order of the court; or
**(cc)** willfully failed to comply with any such court order.
**(ii)** An action referred to under clause (i)(I) is any action of refusing to register, removing from registration, transferring, temporarily disabling, or permanently canceling a domain name—
**(I)** in compliance with a court order under section 1125 (d) of this title; or
**(II)** in the implementation of a reasonable policy by such registrar, registry, or authority prohibiting the registration of a domain name that is identical to, confusingly similar to, or dilutive of another's mark.
**(iii)** A domain name registrar, a domain name registry, or other domain name registration authority shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name.
**(iv)** If a registrar, registry, or other registration authority takes an action described

under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action. The court may also grant injunctive relief to the domain name registrant, including the reactivation of the domain name or the transfer of the domain name to the domain name registrant.

**(V)** A domain name registrant whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the registration or use of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

**(E)** As used in this paragraph—

**(I)** the term "violator" means a person who violates section 1125 (a) of this title; and

**(II)** the term "violating matter" means matter that is the subject of a violation under section 1125 (a) of this title.

**(3)**

**(A)** Any person who engages in the conduct described in paragraph (11) of section 110 of title 17: TITLE 17 > CHAPTER 1 > § 110 § 110. Limitations on exclusive rights: Exemption of certain performances and displays Not withstanding the provisions of section 106, the following are not infringements of copyright:

**(1)** performance or display of a work by instructors or pupils in the course of face-to-face teaching activities of a nonprofit educational institution, in a classroom or similar place devoted to instruction, unless, in the case of a motion picture or other audiovisual work, the performance, or the display of individual images, is given by means of a copy that was not lawfully made under this title, and that the person responsible for the performance knew or had reason to believe was not lawfully made;

**(2)** except with respect to a work produced or marketed primarily for performance or display as part of mediated instructional activities transmitted via digital networks, or a performance or display that is given by means of a copy or phonorecord that is not lawfully made and acquired under this title, and the transmitting government body or accredited nonprofit educational institution knew or had reason to believe was not lawfully made and acquired, the performance of a nondramatic literary or musical work or reasonable and limited portions of any other work, or display of a work in an amount comparable to that which is typically displayed in the course of a live classroom session, by or in the course of a transmission, if—

**(A)** the performance or display is made by, at the direction of, or under the actual supervision of an instructor as an integral part of a class session offered as a regular part of the systematic mediated instructional activities of a governmental body or an accredited nonprofit educational institution;

**(B)** the performance or display is directly related and of material assistance to the teaching content of the transmission;

**(C)** the transmission is made solely for, and, to the extent technologically feasible, the reception of such transmission is limited to—

**(I)** students officially enrolled in the course for which the transmission is made; or

**(II)** officers or employees of governmental bodies as a part of their official duties or employment; and

**(D)** the transmitting body or institution—

**(I)** institutes policies regarding copyright, provides informational materials to faculty, students, and relevant staff members that accurately describe, and promote compliance with, the laws of the United States relating to copyright, and provides

notice to students that materials used in connection with the course may be subject to copyright protection; and
**(ii)** in the case of digital transmissions—
**(I)** applies technological measures that reasonably prevent—
**(aa)** retention of the work in accessible form by recipients of the transmission from the transmitting body or institution for longer than the class session; and
**(bb)** unauthorized further dissemination of the work in accessible form by such recipients to others; and
**(II)** does not engage in conduct that could reasonably be expected to interfere with technological measures used by copyright owners to prevent such retention or unauthorized further dissemination;
**(3)** performance of a nondramatic literary or musical work or of a dramatico-musical work of a religious nature, or display of a work, in the course of services at a place of worship or other religious assembly;
**(4)** performance of a nondramatic literary or musical work otherwise than in a transmission to the public, without any purpose of direct or indirect commercial advantage and without payment of any fee or other compensation for the performance to any of its performers, promoters, or organizers, if—
**(A)** there is no direct or indirect admission charge; or
**(B)** the proceeds, after deducting the reasonable costs of producing the performance, are used exclusively for educational, religious, or charitable purposes and not for private financial gain, except where the copyright owner has served notice of objection to the performance under the following conditions:
**(i)** the notice shall be in writing and signed by the copyright owner or such owner's duly authorized agent; and
**(ii)** the notice shall be served on the person responsible for the performance at least seven days before the date of the performance, and shall state the reasons for the objection; and
**(iii)** the notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation;
**(5)**
**(A)** except as provided in subparagraph (B), communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—
**(i)** a direct charge is made to see or hear the transmission; or
**(ii)** the transmission thus received is further transmitted to the public;
**(B)** communication by an establishment of a transmission or retransmission embodying a performance or display of a nondramatic musical work intended to be received by the general public, originated by a radio or television broadcast station licensed as such by the Federal Communications Commission, or, if an audiovisual transmission, by a cable system or satellite carrier, if—
**(i)** in the case of an establishment other than a food service or drinking establishment, either the establishment in which the communication occurs has less than 2,000 gross square feet of space (excluding space used for customer parking and for no other purpose), or the establishment in which the communication occurs has 2,000 or more gross square feet of space (excluding space used for customer parking and for no other purpose) and—
**(I)** if the performance is by audio means only, the performance is communicated by means of a total of not more than 6 loudspeakers, of which not more than 4 loudspeakers are located in any 1 room or adjoining outdoor space; or
**(II)** if the performance or display is by audiovisual means, any visual portion of the performance or display is communicated by means of a total of not more than 4 audiovisual devices, of which not more than 1 audiovisual device is located in any 1

room, and no such audiovisual device has a diagonal screen size greater than 55 inches, and any audio portion of the performance or display is communicated by means of a total of not more than 6 loudspeakers, of which not more than 4 loudspeakers are located in any 1 room or adjoining outdoor space;

(ii) in the case of a food service or drinking establishment, either the establishment in which the communication occurs has less than 3,750 gross square feet of space (excluding space used for customer parking and for no other purpose), or the establishment in which the communication occurs has 3,750 gross square feet of space or more (excluding space used for customer parking and for no other purpose) and—

(I) if the performance is by audio means only, the performance is communicated by means of a total of not more than 6 loudspeakers, of which not more than 4 loudspeakers are located in any 1 room or adjoining outdoor space; or

(II) if the performance or display is by audiovisual means, any visual portion of the performance or display is communicated by means of a total of not more than 4 audiovisual devices, of which not more than one audiovisual device is located in any 1 room, and no such audiovisual device has a diagonal screen size greater than 55 inches, and any audio portion of the performance or display is communicated by means of a total of not more than 6 loudspeakers, of which not more than 4 loudspeakers are located in any 1 room or adjoining outdoor space;

(iii) no direct charge is made to see or hear the transmission or retransmission;

(iv) the transmission or retransmission is not further transmitted beyond the establishment where it is received; and

(v) the transmission or retransmission is licensed by the copyright owner of the work so publicly performed or displayed;

(6) performance of a nondramatic musical work by a governmental body or a nonprofit agricultural or horticultural organization, in the course of an annual agricultural or horticultural fair or exhibition conducted by such body or organization; the exemption provided by this clause shall extend to any liability for copyright infringement that would otherwise be imposed on such body or organization, under doctrines of vicarious liability or related infringement, for a performance by a concessionnaire,[1] business establishment, or other person at such fair or exhibition, but shall not excuse any such person from liability for the performance;

(7) performance of a nondramatic musical work by a vending establishment open to the public at large without any direct or indirect admission charge, where the sole purpose of the performance is to promote the retail sale of copies or phonorecords of the work, or of the audiovisual or other devices utilized in such performance, and the performance is not transmitted beyond the place where the establishment is located and is within the immediate area where the sale is occurring;

(8) performance of a nondramatic literary work, by or in the course of a transmission specifically designed for and primarily directed to blind or other handicapped persons who are unable to read normal printed material as a result of their handicap, or deaf or other handicapped persons who are unable to hear the aural signals accompanying a transmission of visual signals, if the performance is made without any purpose of direct or indirect commercial advantage and its transmission is made through the facilities of:

(i) a governmental body; or

(ii) a noncommercial educational broadcast station (as defined in section 397 of title 47); or

(iii) a radio subcarrier authorization (as defined in 47 CFR 73.293–73.295 and 73.593–73.595); or

(iv) a cable system (as defined in section 111 (f));

(9) performance on a single occasion of a dramatic literary work published at least ten years before the date of the performance, by or in the course of a transmission

specifically designed for and primarily directed to blind or other handicapped persons who are unable to read normal printed material as a result of their handicap, if the performance is made without any purpose of direct or indirect commercial advantage and its transmission is made through the facilities of a radio subcarrier authorization referred to in clause (8)(iii), Provided, That the provisions of this clause shall not be applicable to more than one performance of the same work by the same performers or under the auspices of the same organization;

**(10)** notwithstanding paragraph (4), the following is not an infringement of copyright: performance of a nondramatic literary or musical work in the course of a social function which is organized and promoted by a nonprofit veterans' organization or a nonprofit fraternal organization to which the general public is not invited, but not including the invitees of the organizations, if the proceeds from the performance, after deducting the reasonable costs of producing the performance, are used exclusively for charitable purposes and not for financial gain. For purposes of this section the social functions of any college or university fraternity or sorority shall not be included unless the social function is held solely to raise funds for a specific charitable purpose; and

**(11)** the making imperceptible, by or at the direction of a member of a private household, of limited portions of audio or video content of a motion picture, during a performance in or transmitted to that household for private home viewing, from an authorized copy of the motion picture, or the creation or provision of a computer program or other technology that enables such making imperceptible and that is designed and marketed to be used, at the direction of a member of a private household, for such making imperceptible, if no fixed copy of the altered version of the motion picture is created by such computer program or other technology.

The exemptions provided under paragraph (5) shall not be taken into account in any administrative, judicial, or other governmental proceeding to set or adjust the royalties payable to copyright owners for the public performance or display of their works. Royalties payable to copyright owners for any public performance or display of their works other than such performances or displays as are exempted under paragraph (5) shall not be diminished in any respect as a result of such exemption.

In paragraph (2), the term "mediated instructional activities" with respect to the performance or display of a work by digital transmission under this section refers to activities that use such work as an integral part of the class experience, controlled by or under the actual supervision of the instructor and analogous to the type of performance or display that would take place in a live classroom setting. The term does not refer to activities that use, in 1 or more class sessions of a single course, such works as textbooks, course packs, or other material in any media, copies or phonorecords of which are typically purchased or acquired by the students in higher education for their independent use and retention or are typically purchased or acquired for elementary and secondary students for their possession and independent use.

For purposes of paragraph (2), accreditation—

**(A)** with respect to an institution providing post-secondary education, shall be as determined by a regional or national accrediting agency recognized by the Council on Higher Education Accreditation or the United States Department of Education; and

**(B)** with respect to an institution providing elementary or secondary education, shall be as recognized by the applicable state certification or licensing procedures.

For purposes of paragraph (2), no governmental body or accredited nonprofit educational institution shall be liable for infringement by reason of the transient or temporary storage of material carried out through the automatic technical process of a digital transmission of the performance or display of that material as authorized under paragraph (2). No such material stored on the system or network controlled or operated by the transmitting body or institution under this paragraph shall be

maintained on such system or network in a manner ordinarily accessible to anyone other than anticipated recipients. No such copy shall be maintained on the system or network in a manner ordinarily accessible to such anticipated recipients for a longer period than is reasonably necessary to facilitate the transmissions for which it was made.
For purposes of paragraph (11), the term "making imperceptible" does not include the addition of audio or video content that is performed or displayed over or in place of existing content in a motion picture.
Nothing in paragraph (11) shall be construed to imply further rights under section 106 of this title, or to have any effect on defenses or limitations on rights granted under any other section of this title or under any other paragraph of this section.

[1] So in original. Probably should be "concessionaire".

TITLE 18 > PART I > CHAPTER 119 > § 2510: § 2510. Definitions (A) (continued) and who complies with the requirements set forth in that paragraph is not liable on account of such conduct for a violation of any right under this chapter. This subparagraph does not preclude liability, nor shall it be construed to restrict the defenses or limitations on rights granted under this chapter, of a person for conduct not described in paragraph (11) of section 110 of title 17, even if that person also engages in conduct described in paragraph (11) of section 110 of such title.

**(B)** A manufacturer, licensee, or licensor of technology that enables the making of limited portions of audio or video content of a motion picture imperceptible as described in subparagraph (A) is not liable on account of such manufacture or license for a violation of any right under this chapter, if such manufacturer, licensee, or licensor ensures that the technology provides a clear and conspicuous notice at the beginning of each performance that the performance of the motion picture is altered from the performance intended by the director or copyright holder of the motion picture. The limitations on liability in subparagraph (A) and this subparagraph shall not apply to a manufacturer, licensee, or licensor of technology that fails to comply with this paragraph.
**(C)** The requirement under subparagraph (B) to provide notice shall apply only with respect to technology manufactured after the end of the 180-day period beginning on April 27, 2005.
**(D)** Any failure by a manufacturer, licensee, or licensor of technology to qualify for the exemption under subparagraphs (A) and (B) shall not be construed to create an inference that any such party that engages in conduct described in paragraph (11) of section 110 of title 17 is liable for **trademark infringement** by reason of such conduct.

## PARTIES

1. Jamil E. Ezzo is the registrant and rightful owner of United States Trademark, titled 'LOCATE PLASTIC SURGEON', serial number 78610365 filed for by Plaintiff with the United States Patent and Trademark Office, Washington D. C. on April 16, 2005 registration number 3115516, registration date July 11, 2006 (    hereafter "the property"). EXHIBIT 1. Plaintiff is a citizen of the United States and has occupied as his homestead

and principal residence property located at 331 SE 46th Lane, Cape Coral Florida 33904.

2. GOOGLE.COM Inc. is a corporation, which has its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043 GOOGLE .COM is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

3. AOL COM, AOL LLC is a corporation, which has its principal place of business 22000 AOL Way, Dulles, VA. AOL.COM is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.
TIME WARNER, INC. is a Delaware Corporation and the parent company of AOL.COM which has its principal place of business at One Time Warner Center, New York, New York 10019

4. GetMeQuotes.com, Findcosmeticsurgeons.com ET AL, Enrique Rangel Representative, 7009 Bending Oak Rd., TBA, Austin, TX 78749, on information and belief is a internet link sponsored by the GOOGLE.COM internet search engine and is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

5. DOCTORSSAYYES.COM, My Choice Medical Acquisition Sub Inc. ET AL. Becky Hannon Representative, 1410 Spruce Street, Stroudsburg, PA 18360 on information and belief is a internet link. The AOL.com search home page when utilized the results reveal Doctorssyyes.com as an internet Link to Find Plastic Surgeons and is a direct infringement of Plaintiff's Trademark. This infringement is sponsored by AOL.com and the GOOGLE.COM internet search engine and is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

6. ETC. FINDYOURPLASTICSURGEON.COM, Baskettcaseweb Development, ET AL. .1671 Jefferson Ave., Escondido, California 92027, on information and belief is a internet link sponsored by the GOOGLE.COM internet search engine and is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

7. PLASTICSURGERY.ORG. AMERICAN SOCIETY of PLASTIC

SURGEONS, Plastic Surgery Educational Foundation, 444 E. Algonquin Rd. Arlington Heights, IL 60005, on information and belief is a internet link. The AOL.com search home page when utilized the results reveal plasticsurgery.org.com as an Internet Link to Find Plastic Surgeons and is a direct infringement of Plaintiff's Trademark. This infringement is sponsored by AOL.com and the GOOGLE.COM Internet search engine and is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

8. YELLOWBOOKLEADS.COM ET AL., 2560 Renaissance Blvd., King of Prussia, PA 19406, on information and belief is a internet link. The AOL.com search home page when utilized the results reveal Yellowpageleads.com and YellowPages@aol.com as an Internet Link to Find Plastic Surgeons and is a direct infringement of Plaintiff's Trademark. This infringement is sponsored by AOL.com and the GOOGLE.COM Internet search engine and is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

9. IENHANCE.COM, PLASTICSURGERY.COM, Gregory J. Powers, Powers Acquisition, Inc. ET AL., 8667 Haven Avenue, Rancho Cucamonga, CA 91730, on information and belief is a internet link. The AOL.com search home page when utilized the results reveal ienhance.com and plasticsurgery.com as an Internet Link to Find Plastic Surgeons and is a direct infringement of Plaintiff's Trademark. This infringement is sponsored by AOL.com and the GOOGLE.COM Internet search engine and is not licensed to use or employ plaintiff's US Trademark 'LOCATE PLASTIC SURGEON' has done so and continues to do so, thereby for and making a profit to the detriment of plaintiff usurping plaintiff's intellectual property rights.

Ezzo sues GOOGLE.COM, AOL.COM, parties and re-alleges paragraphs 1 through 11, and states: GOOGLE.COM and AOL.COM are internet search engines who through negligence, lack of diligence, malfeasance, fraud and complicity allowed defendant's proprietary Trademark to be infringed upon to the disadvantage of and financial detriment of plaintiff. The parties are sued in their capacity as parties and as present and previous Trademark infringement in participation with the defendants.

## GENERAL ALLEGATIONS

1. 'LOCATE PLASTIC SURGEON' is the title to United States Trademark, serial number 78610365 and is the exclusive intellectual property of plaintiff. GOOGLE.COM has used their internet search engine as a tool and instrument of

fraud thereby employing plaintiff's trademark for profit without his permission.

2. AOL.COM has used their internet search engine as a tool and instrument of fraud thereby employing plaintiff's trademark for profit without his permission.

3. There exist numerous parties in collusion and sanctioned by the GOOGLE.COM and AOL.COM internet search engines who are also culpable by their actions that also rely on and use the search engines as a tool and instrument of fraud employing plaintiff's intellectual property without right or permission.

4. The historic usurping of the plaintiff's United States Trademark intellectual property by the defendants and parties may be estimated to be $30,000,000.00. Assuming a client base of a minimum of 5,000 clients subscribing to plaintiff's web site at a subscription price of $1,200.00 per annum per client ($100.00 per month per client) for one year equals $6,000,000.00. times 5 years of lost revenues by the egregious acts of the defendants and parties equals $30,000,000.00 The United States Code allows for the plaintiff to receive three times the damages of $30,000,000.00 equals $90,000,000.00 total damages due plaintiff from defendants and parties.

5. Defendants and agents, particularly fraudulently induced plaintiff to enter into the written and oral agreements, as specifically hereafter described by color or aid of fraudulent or false representations and pretenses to the disadvantage of plaintiff.

6. The claim of plaintiff is based upon a duly recorded and issued United States Trademark conveying fee title to plaintiff.

7. The claim of plaintiff is further based on existing and historic use of plaintiff's property by the defendants to exploit for and usurp profits that the plaintiff is the rightful owner.

## FRAUD

Ezzo sues GOOGLE.COM, AOL.COM, parties and re-alleges paragraphs 1 through 19, and states: GOOGLE.COM and AOL.COM are internet search engines who as party to the contracts, through their representatives and agents, and through the actual or apparent parties of association with and postings on the search engines of GOOGLE.COM, AOL.COM, made the following misrepresentations to plaintiff:

<u>Misrepresentations</u>
a. The defendants GOOGLE.COM, AOL.COM and parties made the representations with knowledge that they were false, or, alternatively, with reckless disregard as to their truth or falsity.
b. These defendants intended the plaintiff to act and refrain from acting in reliance

upon the misrepresentations.
c. The plaintiff relied upon the misrepresentations in entering in to the agreements
d. The plaintiff's reliance upon the representations was justified.
e. The plaintiff has suffered actual pecuniary loss as a result of the reliance on the false statements and representations of defendants.

Wherefore, the plaintiff demands judgment for damages against the defendants.

**Rescission**

**(Based on Misrepresentations)**

Ezzo sues GOOGLE.COM, AOL.COM, parties for rescission of the agreements, and re-alleges paragraphs 1 through 19, paragraphs a. through e. and states:

8. The transaction was fatally flawed from the onset, the defendants illegally solicited plaintiff to list his United States Trademark, 'LOCATE PLASTIC SURGEON' as a link on defendant's internet search engines for the purpose of obtaining profits for plaintiff. Plaintiff was not at the time from the Trademark filing date April 16, 2005, dates of solicitation or at anytime aware the use by defendants of his Trademark obtained under false pretense and representations would be to the disadvantage of plaintiff and to the advantage of defendants, GOOGLE.COM, AOL.COM and parties et. al. The defendants are fully aware they are prohibited by law from this unfair practice.

9. The fraudulent infringement of plaintiff's United States Trademark was to misrepresent the true nature of the transaction to plaintiff and illegally an attempt to avoid the Trademark rights of plaintiff. The plaintiff was not given the right of rescission based on defendant's written and oral representations that plaintiff could rescind the use of his United States Trademark In the absence of rescission rights and documents being provided to plaintiff through the internet search engines of defendants the use of which is as a tool and instrument of fraud. The use of plaintiff's property by defendants was represented as and intended for the purpose of the written and oral agreements that plaintiff would retain the right to rescind the transaction.

10. Plaintiff has duly served defendants with Notice of United States Trademark infringements.

11. Plaintiff took steps preparatory to acceptance of the agreements, and execution of the agreements, upon the misrepresentation of defendants which were not correctly and truly represented to plaintiff by the defendants and its agents, and particularly upon the misrepresentations of GOOGLE.COM and AOL.COM.

12. The misrepresentation went to material factors, past or present, in the

negotiations leading up to the agreements.

13. The plaintiff reasonably relied upon the misrepresentations of defendants and its agents, which, on information and belief, were innocent acceptance of these misrepresentations by plaintiff based upon the fraudulent misrepresentation of defendants.

14. The plaintiff actually and reasonably relied upon the misrepresentations of defendants, which were not innocent, and which were fraudulent.

## Injunction

Ezzo sues GOOGLE.COM and AOL.COM and re-alleges paragraphs 1 through 26, request an immediate injunction from the honorable court and states:

15. This is an action for an injunction prohibiting any action by the defendants which will result in the continued loss of profits representing plaintiffs' intellectual property rights.

16. The defendants have wrongfully induced the plaintiff to enter into written and oral agreements by false representations that substantially and adversely affect the property rights of the defendant.

17. Under the written and oral agreements perpetrated by the defendants, the defendants have fraudulently induced the plaintiff and employed for profit the property of plaintiff without his permission evidently representing themselves as the *de facto* owners of the property. The United States Trademark rights owned by the plaintiff are in fact and deed severely extinguished by the unlawful infringement by the defendants.

18. It was the intent of the parties that written and oral agreements constitute the only use of plaintiffs' property and is not a de facto transfer of the property.

19. Enjoining the further physical and abstract use of plaintiff's property for exploitation of profits by the defendants until such time as these issues can be determined will not in any way adversely affects GOOGLE.COM, AOL.COM or any other defendant.

20. Loss of the plaintiffs' profit and principal interest in plaintiffs' property will cause continued irreparable injury, and increase money damages, any course of action other than to enjoin defendants will be inadequate.

21. TRADEMARK DEFINITIONS, ETC. **SEE:** United States Code TITLE 15 > CHAPTER 22 > SUBCHAPTER III > § 1114 SEE: **Page 2., para. (B)** The property is unique in: **(B)** Where the **infringement** or violation complained of is contained in or is part of paid advertising matter in a newspaper, magazine, or other similar periodical or in an electronic communication as defined in section

2510 (12) of title 18, TITLE 18 > PART I > CHAPTER 119 > § 2510
Definitions SEE: **Page 2. through para. (B) Page 4.**

22. The plaintiff has adequate remedy at law. SEE: The defendants and parties are in violation of United States Code TITLE 15 > CHAPTER 22 > SUBCHAPTER III > § 1114 Remedies **Page 1. through para. (B) Page 4.**

Wherefore, Ezzo sues GOOGLE.COM and AOL.COM and re-alleges paragraphs 1 through 34, and the plaintiff respectfully requests the injunction as follows:

a. Prohibiting the defendants from transferring any inquires to defendants search engines for 'LOCATE PLASTIC SURGEON' to any third party other than plaintiff.
b. Prohibiting defendants from in any way apparent title to the property, or use of title to the property; except to the behoove of plaintiff.
c. Prohibiting defendants from progressing counter proceedings against plaintiff contesting plaintiff as the rightful and true owner of United States Trademark, titled 'LOCATE PLASTIC SURGEON', serial number 78610365 filed for by Plaintiff with the United States Patent and Trademark Office, Washington D. C. on April 16, 2005 registration number 3115516, registration date July 11, 2006.
And all titles having the same definitions as 'LOCATE PLASTIC SURGEON', e.g., Locate Plastic Surgeon, Find Plastic Surgeon, Locate Cosmetic, Surgeon, Find Cosmetic Surgeon, Locate Lasik Surgeon, Find Cosmetic Surgeon, etc.
d. Prohibiting ejectment of the plaintiff's property from the defendants search engines.
e. And providing such other and further relief and as may be just and equitable under the circumstances to protect the interests of the plaintiff.

Plaintiff in this case pleads the honorable court to grant issuance of an Injunction and a Court Order Declaring the honorable court's ruling in the matters described above and such other relief as may be just and proper.

I HEREBY CERTIFY that the above is true and correct to the best of my knowledge and ability, this 17th day of March, 2009.

_(signature)_

JAMIL E. EZZO, Plaintiff, Pro Se
331 SE 46th Lane
Cape Coral, FL 33904
Phone: 239-945-2234

Attachments: Plaintiff's Affidavit

# AFFIDAVIT

Affiant attest to the facts and representations as portrayed in plaintiff's legal brief herewith filed in the UNITED STATES 11th DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, In re:

    JAMIL E. EZZO
    *Plaintiff,*

    Vs

    GOOGLE. INC. ET AL.
    AOL.COM
    Time Warner, Parent Company for AOL.COM ET AL.

    *Defendants,*

    And

    *Parties.*

GetMeQuotes.com
Findcosmeticsurgeons.com ET AL.

DOCTORSSAYYES.COM
My Choice Medical Acquistion Sub Inc. ET AL.

FINDYOURPLASTICSURGEON.COM
Baskettcaseweb Development, ET AL.

IENHANCE.COM
PLASTICSURGERY.COM

PLASTICSURGERY.ORG
AMERICAN SOCIETY of PLASTIC SURGEONS

YELLOWBOOKLEADS.COM ET AL.

To be true and correct to the best of his knowledge, belief and ability.

This the 17th day of March 2009.

Affiant:                                NOTARY:
                                            State of Florida        SEAL:

*[signature]*

JAMIL E. EZZO                       County of Lee _____

# SERVICE LIST

Clerk of the US Civil Court
Middle District of Florida
U.S. Courthouse & Federal Building
2110 First Street
Fort Myers, Florida 33901

GOOGLE INC. ET AL.
1600 Amphitheater Parkway
Mountain View, California 94043

AOL.COM
AOL LLC
22000 AOL Way
Dulles, VA 20166

ATTORNEY of Parent company for AOL.COM
TIME WARNER, INC.
% Janice Cannon, One Time Warner Center.
14th Floor, Legal Department
New York, New York 10019

PARTIES:

GetMeQuotes.com
Findcosmeticsurgeons.com ET AL.
Enrique Rangel
7009 Bending Oak Rd.
TBA
Austin, TX 78749

DOCTORSSAYYES.COM
My Choice Medical Acquisition Sub Inc. ET AL.
Becky Hannon
1410 Spruce Street
Stroudsburg, PA 18360

FINDYOURPLASTICSURGEON.COM
Baskettcaseweb Development, ET AL.
1671 Jefferson Ave.
Escondido, California 92027

IENHANCE.COM
PLASTICSURGERY.COM
Gregory J. Powers
Powers Acquisition, Inc. ET AL.
8667 Haven Avenue
Rancho Cucamonga, CA 91730

PLASTICSURGERY.ORG
AMERICAN SOCIETY of
PLASTIC SURGEONS.
Plastic Surgery Educational Found.

444 E. Algonquin Rd. Arlington Heights, IL 60005

YELLOWBOOKLEADS.COM ET AL.
2560 Renaissance Blvd.
King of Prussia, PA 19406

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon all parties on the attached Service List, via U.S. Mail, facsimile or hand delivery, this the 17th day of March, 2009.

_____
JAMIL E. EZZO, Plaintiff, Pro Se
331 SE 46th Lane
Cape Coral, FL 33904
Phone: 239-945-2234